IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | C.A. NO. C-12-133 |
| | § | |
| 2008 FORD EXPEDITION SUV | § | |
| (VIN 1FMFU19588LA79197) | § | |

## MEMORANDUM AND RECOMMENDATION TO
## DENY CLAIMANT'S MOTION FOR JUDGMENT

This is a civil forfeiture action in rem filed by the United States pursuant to 21 U.S.C.

§ 881, et seq., seeking forfeiture of defendant property, a 2008 Ford Expedition SUV (VIN

1FMFU19588LA79197). (D.E. 1). Claimant filed an answer and claim of interest pursuant to

Rule G(5) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture

Actions. (D.E. 5). Claimant filed a motion for judgment on the pleadings or, in the alternative, a

motion for summary judgment. (D.E. 7). Plaintiff filed a response in opposition. (D.E. 9). For

the reasons stated herein, it is respectfully recommended that claimant's motion be denied.

### I.  JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345,

1355 because this is a forfeiture action brought by the United States.

### II.  FACTUAL ALLEGATIONS

On October 16, 2011, law enforcement officers seized defendant property, a 2008 Ford

Expedition SUV (VIN 1FMFU19588LA79197) at the Falfurrias Border Patrol Checkpoint

located approximately thirteen miles south of Falfurrias, Texas. (D.E. 1, at 2). The vehicle is

being stored at a United States Marshals Service storage facility located in Corpus Christi,

Texas. Id.

In June 2008, Hacienda Ford in Edinburg, Texas ("claimant") first sold the vehicle to Ignacio and Ernestina Hernandez.  (D.E. 9, at 2).  On July 8, 2008, the State of Texas issued a Texas Certificate of Title listing them as the owners and claimant as the previous owner.  Id.  On April 25, 2011, Crystal Chapa, acting as power of attorney for Mr. and Mrs. Hernandez, transferred and assigned title to the vehicle back to claimant.  Id.  On September 12, 2011, claimant sold the vehicle to Liliana M. Perez.  (D.E. 1, at 2).  As part of the purchase price, Ms. Perez paid a cash down payment of $3,000 to claimant, and traded in her 2002 GMC Yukon. (D.E. 9, at 3).  Claimant sold the trade-in vehicle to a third-party five days later on September 17, 2011.  Id. at 3-4.

Ms. Perez signed a number of documents in connection with the purchase, including: (1) the Motor Vehicle's Buyer's Order; (2) an Agreement to Furnish Insurance Policy; (3) an Odometer Disclosure Statement; and (4) an Application for Texas Certificate of Title.  Id. at 3. On these documents, she is listed as the purchaser, buyer, transferee/buyer, and applicant/owner, respectfully.  Id.  On September 13, 2011, the Texas Department of Motor Vehicles issued her a temporary license tag.  Id. at 4.

On October 16, 2011, Ms. Perez drove the vehicle to the Falfurrias Border Patrol Checkpoint, where she was questioned by border patrol agents.  (D.E. 1, at 2).  A service canine performed a free-air sniff around the vehicle and alerted the agents to the spare tire area.  Id.  Ms. Perez consented to a search of the car, and when the canine alerted to the spare tire, the agents cut it open.  Id.  Inside the tire were approximately twenty-six bundles of marijuana wrapped in clear cellophane, weighing about fifty-six pounds.  Id.

On May 1, 2012, plaintiff filed a complaint for forfeiture in rem seeking a judgment of forfeiture in its favor pursuant to 21 U.S.C. § 881(a)(4).  (D.E. 1).  A warrant of arrest in rem was issued for seizure of the vehicle which was executed on May 8, 2012, on the basis that Ms. Perez used or intended to use defendant property to transport, or in any manner, to facilitate the transportation, sale, receipt, possession or concealment of marijuana in violation of the Controlled Substances Act, 21 U.S.C. § 801, et seq.  Id.

On May 2, 2012, plaintiff posted notice of the forfeiture on an official government website for thirty consecutive days pursuant to Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  (D.E. 4).  On June 4, 2012, claimant filed a claim of interest and answer to plaintiff's complaint.  (D.E. 5; D.E. 6).  On August 30, 2012, claimant filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or, in the alternative, a motion for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56.  (D.E. 7).  On September 26, 2012, plaintiff filed a response in opposition to claimant's motion.  (D.E. 9).

### III.  DISCUSSION

Claimant contends that it is entitled to return of defendant property because it is the actual owner and because it is an "innocent owner" pursuant to 18 U.S.C. § 983.  (D.E. 5, at 1). In response, plaintiff argues that claimant has no ownership interest in the vehicle and therefore cannot be an "innocent owner" within the meaning of 18 U.S.C. § 983(d)(1).  (D.E. 9, at 9-10).

Because claimant and plaintiff have submitted extraneous material in support and opposition of this motion, it is converted from a motion for judgment on the pleadings into a motion for summary judgment.  Fed. R. Civ. P. 12(d), 56.  "All parties must be given a

3

reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

**A.      Standard Of Review Pursuant To A Motion For Summary Judgment.**

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making this determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the

nonmovant, summary judgment will be granted." <u>Caboni</u>, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  <u>Anderson</u>, 477 U.S. at 250-51.

**B.  Claimant Is Not Entitled To Summary Judgment.**

Claimant asserts that it is an "innocent owner" pursuant to 18 U.S.C. § 983 and that it did not know of the conduct giving rise to this action.  Plaintiff argues in response that claimant is not an "owner" within the meaning of the statute as required to constitute an "innocent owner."

Pursuant to 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."  However, a claimant bears the burden of proving by a preponderance of evidence that it is an "innocent owner."  18 U.S.C. § 983(d)(1).  As a threshold requirement of this burden, claimant must show that it constitutes an "owner" within the meaning of 18 U.S.C. § 983(d)(6).  <u>See</u> <u>United States v. $500,000.00 in U.S. Currency</u>, 591 F.3d 402, 404 (5th Cir. 2009); <u>United States v. One Lincoln Navigator 1998</u>, 328 F.3d 1011, 1014 (8th Cir. 2003).[1]  An "owner" is defined by the statute as "a person with an ownership interest in the [] property ... including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest."  18 U.S.C. § 983(d)(6).  In relevant part, the statute specifically excludes from the definition a person who has only a "general unsecured interest."  18 U.S.C. § 983(d)(6)(B)(I).  Ownership interests asserted pursuant to 18 U.S.C. § 983 are defined by state law.  <u>$500,000.00 in U.S. Currency</u>, 591 F.3d at 405 (citing <u>United States v.</u>

---

[1] Some courts treat the statutory ownership requirement as a matter of Article III standing.  <u>See</u>, <u>e.g.</u>, <u>United States v. One 2004 Land Rover Range Rover</u>, No. 07-CV-818S, 2009 WL 909669, at *3 (W.D.N.Y. Mar. 31, 2009) (unpublished), <u>aff'd</u> 369 F. App'x 208 (2d Cir. 2010) (per curiam) (unpublished); <u>United States v. One 1986 Volvo 750T</u>, 765 F. Supp. 90, 91 (S.D.N.Y. 1991).  While the Fifth Circuit has treated the issue as a matter of prudential standing, the Eighth Circuit has noted, it is in fact a substantive element of an innocent owner's claim.  <u>Compare</u> <u>$500,000 in U.S. Currency</u>, 591 F.3d at 404, <u>with</u> <u>One Lincoln Navigator 1998</u>, 328 F.3d at 1014.

$47,875.00 in U.S. Currency, 746 F.2d 291, 294 (5th Cir. 1984)); One Lincoln Navigator 1998, 328 F.3d at 1014.

### 1.   Claimant is not the actual owner of the vehicle.

Claimant asserts that it is the actual owner of the vehicle because the certificate of title lists it as the "previous owner."  (D.E. 7, at 2; D.E. 9, at 48).  Plaintiff argues in response that claimant is not the actual owner because, regardless of the certificate of title, it sold the vehicle to Ms. Perez and she took ownership upon taking possession.  (D.E. 9, at 6).

Pursuant to Texas law, "[t]he name on the certificate of title is not conclusive of ownership." Vibbert v. PAR, Inc., 224 S.W.3d 317, 321 (Tex. App. 2006) (citing Tyler Car & Truck Ctr. v. Empire Fire & Marine Ins. Co., 2 S.W.3d 482, 485 (Tex. App. 1999); Minter v. Koplin, 535 S.W.2d 737, 738 (Tex. App. 1976)).  Instead, "[e]vidence of the name in which an automobile is registered raises only a presumption of ownership." Id.  This presumption "vanishes when positive evidence to the contrary is introduced." Id. (citing Tyler Car, 2 S.W.3d at 485; Minter, 535 S.W.2d at 739).

The Texas Business and Commerce Code governs ownership of a motor vehicle because "[m]otor vehicles are included in the UCC's definition of 'goods.'"[2] Id. at 322 (citing Tex. Bus. & Com. Code § 2.105(a); First Nat'l Bank of El Campo v. Buss, 143 S.W.3d 915, 920 (Tex.

---

[2] The Texas Transportation Code provides that "a motor vehicle may not be the subject of a subsequent sale unless the owner designated on the title submits a transfer of ownership of title." Tex. Transp. Code § 501.071(a). This section is in conflict with the Texas Business & Commerce Code, which provides that ownership is transferred upon "physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." Tex. Bus. & Com. Code § 2.401(b).  However, the Texas Transportation Code explicitly mandates that this conflict is resolved in favor of the Texas Business and Commerce Code.  See Tex. Transp. Code § 501.005 ("Chapter 1-9, Business & Commerce Code, control over a conflicting provision of this chapter.").

App. 2004); <u>Hudson Buick, Pontiac, GMC Truck Co. v. Gooch</u>, 7 S.W.3d 191, 197 (Tex. App.

1999)).  The title to a motor vehicle passes upon delivery or possession:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place....

Tex. Bus. & Com. Code § 2.401(b).  Thus, as one Texas court summarized, "title to a motor

vehicle passes to the buyer upon delivery or possession even though a certificate of title will be

delivered later and the names on the certificate of title are not changed."  <u>Vibbert</u>, 224 S.W.3d at

322 (citations omitted).  Moreover, title passes upon possession despite the conditional nature of

the sales contract, and a buyer acquires ownership even if she has not obtained financing under

the sales agreement.  <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v. Scott</u>, __ F. Supp. 2d __, No. H-10-

2601, 2012 WL 1098364, at *5 (S.D. Tex. Mar. 30, 2012) (citing <u>Gulf Ins. Co. v. Bobo</u>, 595

S.W.2d 847, 848-49 (Tex. 1980)); <u>Trull v. Service Cas. Ins. Co.</u>, No. 14-07-00314-CV, 2008 WL

2837775, at *3 (Tex. App. 2008) (unpublished) (buyer owned vehicle because he had right to

possess and power to control after buyer and seller "executed documents establishing the terms

of sale[] and the buyer had paid the down payment on the vehicle" even though buyer had not

obtained proof of insurance pursuant to the sale contract) (citing <u>Tyler Car</u>, 2 S.W.3d at 483).

  Here, though claimant did not transfer the certificate of title to Ms. Perez, she took

possession of the vehicle when claimant sold it to her on September 12, 2011.  Accordingly, it is

respectfully recommended that claimant is not the actual owner of the vehicle.

### 2.      Claimant has failed to establish that it holds a security interest in the vehicle.

Though claimant is not the actual owner of the vehicle, it may otherwise constitute an "owner" within the meaning of the statute.  The issue is whether it holds a lien or security interest in the property.[3]  Though claimant puts forth no argument regarding this issue, plaintiff contends that it does not hold a security interest in the vehicle because it assigned any such interest to Security Service F.C.U.  In addition, plaintiff argues that even if claimant holds a security interest, it is a "general unsecured creditor" excluded from the definition of "owner" pursuant to 18 U.S.C. § 983(d)(6) because it failed to perfect its interest.

As part of the installment sales contract between claimant and Ms. Perez for the sale of the vehicle, claimant expressly assigned its security interest to Security Service F.C.U. "without recourse."  (D.E. 9, at 27-28).  The sales contract indicates that the assignment to Security Service F.C.U. was made pursuant to "the terms of [claimant's] agreement(s) with Assignee." Id. at 28.  Claimant intended to obtain financing for the vehicle on behalf of Ms. Perez from Security Service F.C.U.  Id. at 37, 94.  The application for certificate of title dated September 12, 2011 lists Security Service F.C.U. as a lienholder, while claimant is listed as the previous owner and "seller, donor, or trader," and Ms. Perez is listed as the "purchaser, donee, or trader."  Id. at 41.  On the car insurance policy furnished by Ms. Perez, Security Service F.C.U. is listed as the loss payee.  Id. at 57.  Based on this evidence, plaintiff argues that to the extent claimant

---

[3] Pursuant to the Texas Transportation Code, a "lien" is defined as "a security interest, as defined by Section 1.201, Business & Commerce Code, in a motor vehicle, other than an absolute title, created by any written security agreement, as defined by Section 9.102, Business & Commerce Code, including a ... conditional sales contract."  Tex. Transp. Code § 501.002(12)(B).  Section 1.201 of the Business and Commerce Code defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation."  Tex. Bus. & Com. Code § 1.201(b)(35).  Section 9.102 of the Business and Commerce Code defines "security agreement" as "an agreement that creates or provides for a security interest."  Tex. Bus. & Com. Code § 9.102(a)(74); see also Tex. Bus. & Com. Code § 9.102 cmt. 1 (noting that the definition of "security interest" is found in § 1.201).

contends it holds a lien or security interest against the vehicle, it transferred any such interest to Security Service F.C.U.

Despite plaintiff's claims, the record suggests that Security Service F.C.U. never accepted the assignment and claimant retained a security interest in the vehicle. Claimant indicates that it had not yet obtained financing at the time the vehicle was seized, id. at 94, and Security Service F.C.U. has disclaimed any interest in the transaction. Id. at 98. Specifically, Security Service F.C.U. indicates that it neither funded nor received payments for the vehicle as of the date it was seized. Id. at 98. Moreover, despite the language in the installment sales contract, there is no evidence in the record showing Security Service F.C.U. accepted the assignment and agreed to finance the transaction. If this is the case, then Security Service F.C.U. never secured a lien on the property. The motor vehicle buyer's order executed by claimant and Ms. Perez on September 12, 2011 provides that in the event of a non-credit transaction, claimant retains a security interest in the vehicle.[4]   Id. at 55. Based on these facts, it is respectfully recommended that there is an issue of fact regarding whether claimant holds a security interest in the vehicle.

Plaintiff next argues that even if claimant holds a security interest, it is not an "owner" within the meaning of the statute because it did not perfect its interest. According to plaintiff, claimant's unperfected security interest constitutes a "general unsecured interest" excluded from the definition of "owner" pursuant to 18 U.S.C. § 983(d)(6). Plaintiff is correct in its assertion that claimant failed to perfect any security interest it may have had in the vehicle. Pursuant to

---

[4] The buyer's order indicates, "This order does not constitute an agreement for the extension of credit.... It is expressly agree[d] to and understood by Buyer and Seller that in the event of a non-credit transaction Seller retains a security interest in the purchased vehicle until such time as Buyer has paid the Seller [for] the vehicle." (D.E. 9, at 55).

the Texas Certificate of Title Act, "a person may perfect a security interest in a motor vehicle that is the subject of a first or subsequent sale only by recording the security interest on the title." Tex. Transp. Code. § 501.111(a).  Here, claimant has not recorded its security interest on the title and therefore, if it has a security interest, it is one that is unperfected.

However, claimant's failure to perfect does not render it an "unsecured general creditor," thereby excluding it from the definition of  "owner" within the meaning of § 983(d)(6) as plaintiff contends.[5]  Pursuant to Texas law, "the unperfected status of [a claimant] does not divest [it] of its security interest in [the property]."  In re Hancock, 126 B.R. 270, 272 (Bankr. E.D. Tex. 1991).  Instead, the significance of perfecting a security interest is relevant to the extent it determines priority between competing security interests.  Id.  In other words, perfection acts as "a ranking device only."  Id.  Therefore, it is respectfully recommended that even if claimant's security interest is unperfected, it nevertheless may hold a security interest for the purposes of constituting an "owner" pursuant to 18 U.S.C. § 983(d)(6).

---

[5] In support of its proposition, plaintiff cites One 2004 Land Rover Range Rover, 2009 WL 909669, at *3-6.  In that case, the court found that because the claimant failed to perfect its interest in the vehicle by notation on the certificate of title pursuant to Florida law, the plaintiff did not have notice of the interest at the time it seized the vehicle.  Id. at *5.  Therefore, the court treated the claimant as if it held a "general, unsecured interest," indicating that the plaintiff essentially took the property free of the claimant's interest.  Id. at *3.  The court reasoned that pursuant to the seizure statute, "no property right continues to exist in any vehicle upon its use to 'transport' controlled substances or 'to facilitate the transportation, sale, receipt, possession or concealment of' a controlled substance ... and that all 'right, title, and interest in [such property] ... [vests] in the United States upon commission of the act giving rise to forfeiture.'"  Id. at *4 (quoting 21 U.S.C. §§ 881(4)(a), 881(h)).  Thus, even though the claimant perfected its security interest subsequent to seizure of the property, it had no claim as an owner pursuant to 18 U.S.C. § 983.  Id.
    In affirming the district court's decision on appeal, the Second Circuit noted that neither party disputed the assumption that "any property interest [the claimant] had was divested at the moment of seizure ... and that any act thereafter was ineffective."  One 2004 Land Rover Range Rover, 369 F. App'x at 209 n.2.  Without directly ruling on the validity of this assumption, the court indicated that it was incorrect because transfer of ownership pursuant to 21 U.S.C. § 881(h) cannot occur until after a claimant has had an opportunity to assert an innocent owner claim and a final judgment of forfeiture has been entered.  Id. (citations omitted).

Accordingly, it is respectfully recommended that claimant has failed to satisfy its burden to demonstrate that it holds a security interest in the vehicle for the purposes of establishing its "innocent owner" claim.

## IV.  RECOMMENDATION

Accordingly, it is respectfully recommended that claimant's motion for judgment on the pleadings or, in the alternative, a motion for summary judgment, (D.E. 7), be denied.

Respectfully submitted this 26th day of October 2012.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).